ORIGINAL

Rene M. Mitchell
2470 West 1st Street, 7L
Brooklyn, NY 11223
(347) 729-9081
Mitchellrenee496@gmail.com

*Plaintiff Pro Se*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

**RENE M. MITCHELL,**
Plaintiff,

v.

**ROBERT PEARL,**
**JIMMY WAGNER,**
**BOARD OF ELECTIONS IN THE CITY OF NEW YORK**
**MICHAEL NOVAKHOV,**
**JOEY COHEN-SABAN,** and
**CANARSIE COURIER,**
Defendants.

---

**Case No.:** ____________________
*(To be assigned by the Clerk)*

**COMPLAINT AND DEMAND FOR JURY TRIAL**

---

## PARTIES INVOLVED

1. Plaintiff, RENE M. MITCHELL, resides at 2470 West 1st Street, 7L, Brooklyn, NY 11223 and can be contacted at (347) 729-9081 and Mitchellrenee496@gmail.com.

2. Defendant ROBERT PEARL is freelance journalist for Canarsie Courier residing or operating in the State of New York at 1142 East 92nd Street, Brooklyn, NY 11236.

3. Defendant JIMMY WAGNER is a licensed practicing attorney specializing in estate law operating in the State of New York at 2055 Flatbush Avenue, Brooklyn, NY 11234, who also serves as the President of the Donald J. Trump Republican Club.



REC'D IN PRO SE OFFICE
AUG 31 '26 PM12:03

4. Defendant BOARD OF ELECTIONS IN THE CITY OF NEW YORK is a public administrative body operating under the laws of the State of New York operating at 32 Broadway, 7th Floor, New York, NY 10004.

5. Defendant MICHAEL NOVAKHOV is an elected New York State Assemblyman operating in the State of New York at 1800 Sheepshead Bay Road, Brooklyn, NY 11235.

6. Defendant JOEY COHEN-SABAN is a Chief of Staff of State Senator Sam Sutton and candidate for State Assembly District 45, operating in the State of New York at 1412 Avenue J, Brooklyn, NY 11230.

7. Defendant CANARSIE COURIER is an independent weekly newspaper in Brooklyn operating in the State of New York at 1142 East 92nd Street, Brooklyn, NY 11236.

**JURISDICTION & VENUE**

8. This Court has subject-matter jurisdiction over this action pursuant to **28 U.S.C. § 1331** because the claims arise under the Constitution and laws of the United States, specifically **42 U.S.C. § 1983** (deprivation of civil rights under color of law) and the First and Fourteenth Amendments.

9. Venue is proper in the Eastern District of New York pursuant to **28 U.S.C. § 1391(b)** because a substantial part of the events, omissions, and civil rights violations giving rise to the claims occurred within Brooklyn, New York.

**CASE NUMBER**

10. The Case Number field is left blank and will be officially generated and assigned by the Clerk of Court for the Eastern District of New York upon the initial filing of this Complaint.

**STATEMENT OF FACTS**

11. During the 2026 election cycle, Plaintiff ran as an active candidate for public office in Brooklyn, New York.

12. In accordance with New York election laws, Plaintiff successfully gathered and submitted an official nomination petition containing exactly 1,505 valid signatures from registered voters to secure a spot on the ballot.

13. Despite the submission of a sufficient number of valid voter signatures, Defendant Board of Elections in the City of New York officially disqualified Plaintiff and stripped Plaintiff's name from the active election ballot based entirely on an alleged clerical error located on the petition's cover sheet.

14. Specifically, the sole basis for the disqualification was that on the petition cover sheet, Plaintiff entered her party designation, "Independent," rather than writing her specific

independent body name, "Accountability for NYS," on the designated line at the top of the form. However, the explicit printed instructions under that line state: "(Place Name of Party or Independent Body Here)." Plaintiff precisely and correctly followed the administrative directions as written; furthermore, the independent body name, "Accountability for NYS," did explicitly appear on the very same cover sheet form inside the designated table located directly below said line. *(A true and correct copy of the rejected cover sheet and the Board of Elections Disqualification Notice is attached hereto collectively as **Exhibit D**).*

15. The strict administrative disqualification and removal of a candidate for a harmless, hyper-technical box-placement error—despite overwhelming and undisputed voter support—constitutes active voter suppression and a direct deprivation of the constitutional rights of both Plaintiff and the 1,505 signing voters.

16. The unlawful ballot disqualification by Defendant Board of Elections in the City of New York completely halted and severely delayed Plaintiff's active campaign operations, forcing Plaintiff to divert vital campaign time, focus, and financial resources toward emergency legal defense.

17. To protect the constitutional expressions of Plaintiff's 1,505 signers and fight to regain Plaintiff's lawful place on the ballot after the cover sheet disqualification, Plaintiff was forced to immediately initiate an emergency state court ballot access proceeding against Defendant Board of Elections in the City of New York under New York Civil Practice Law and Rules (CPLR) Article 78 on June 23, 2026. *(A true and correct copy of the officially date-stamped first page of Plaintiff's state court Article 78 Petition is attached hereto as **Exhibit E**).*

18. Upon entering the state courthouse law library on June 23, 2026, to seek assistance from the law clerk with her emergency Article 78 filing forms, Plaintiff observed Defendant Jimmy Wagner present inside the library, monitoring her presence.

19. After successfully filing the Article 78 petition, Plaintiff sat on a first-floor courthouse bench to review Plaintiff's legal paperwork, at which point Defendant Jimmy Wagner aggressively approached her, intrusively attempted to read her private documents, and demanded: "Did you file?"

20. Plaintiff informed Defendant Jimmy Wagner that he was not named in that specific paperwork and confronted him as to why he had failed to intervene when Defendant Robert Pearl was systematically stalking and following her during her signature collection.

21. Defendant Jimmy Wagner explicitly admitted his prior knowledge of the unlawful surveillance, stating that he had spoken to Defendant Robert Pearl and told him that he

"shouldn't be doing that," and further stated that he was fully aware that there are "bad people" involved.

22. Defendant Jimmy Wagner then actively attempted to coerce and induce Plaintiff into abandoning her state court ballot access proceeding, stating that Plaintiff should not waste her time, that Plaintiff must drop the lawsuit because the court "isn't going to do anything anyway," and explicitly offered to buy Plaintiff's silence by stating she should come work for him, and he would place Plaintiff directly onto his payroll.

23. On the exact same date of June 23, 2026, that the Article 78 petition was initiated, Plaintiff's sister properly executed timely personal service of the lawsuit papers upon Defendant Board of Elections in the City of New York in person at their official administrative offices.

24. Immediately following personal service, Plaintiff's sister had the formal Affidavit of Service legally notarized by a notary public located on the first floor of 26 Court Street in Brooklyn, New York, which is directly across the street from the courthouse.

25. Plaintiff's sister promptly delivered and filed the notarized Affidavit of Service directly with the Clerk of the New York State Supreme Court, establishing an official judicial record that Defendant Board of Elections in the City of New York was fully and properly served with immediate notice of the litigation. *(A true and correct copy of the notarized state court Affidavit of Service is attached hereto as **Exhibit E**).*

26. Despite receiving flawless personal service on June 23, 2026, Defendant Board of Elections in the City of New York completely failed to provide Plaintiff with advance service of their responsive legal brief or opposition papers.

27. Instead, the assigned attorney for Defendant Board of Elections in the City of New York intentionally withheld their legal arguments, waiting until the actual date of the Article 78 court hearing on June 26, 2026, to hand-deliver their responsive brief directly to Plaintiff inside the courtroom.

28. By executing this courtroom ambush tactic despite having three days of proper notice, the attorney for Defendant Board of Elections in the City of New York effectively deprived Plaintiff of her procedural due process rights, leaving her with zero time to review their arguments, cross-reference election rules, or prepare an informed legal rebuttal to save her candidacy.

29. On June 26, 2026, grossly hobbled by the lack of advance service and denied a meaningful opportunity to prepare, Plaintiff was forced into an immediate hearing, resulting in the New York State Supreme Court issuing a final decision in favor of the disqualification, upholding the administrative actions of Defendant Board of Elections in

the City of New York and keeping Plaintiff off the active ballot. *(A true and correct copy of the June 26, 2026, State Supreme Court Decision is attached hereto as **Exhibit E-1**).*

30. Immediately upon exiting the courtroom following the Article 78 hearing on June 26, 2026, Plaintiff observed Defendants Michael Novakhov and Joey Cohen-Saban, along with their respective legal counsel, present in the courthouse corridor, where they were actively defending separate, concurrent allegations of systemic nomination petition signature fraud involving the unauthorized use of deceased individuals' names.

31. Upon observing Plaintiff exit the courtroom, the legal counsel representing Defendant Joey Cohen-Saban directly confronted Plaintiff, stating explicitly: "Are you Renee Mitchell? I'm Defendant Joey Cohen-Saban's lawyer. I heard everything in the courtroom the judge said. He's not going to put you back on the ballot. You're not going to win the case. Are you going to support my client and help him win?"

32. Plaintiff maintained absolute silence and refused to respond to this aggressive, unsolicited confrontation.

33. The legal counsel's courtroom-corridor confrontation constitutes an intentional act of political intimidation, an illicit solicitation of political capitulation, and an explicit admission that the individual Defendants were actively tracking, monitoring, and exploiting the Board of Elections' un-served administrative actions to force Plaintiff out of the race.

34. To contest this erroneous ruling and exhaust her available state legal remedies, Plaintiff filed a formal appeal in the Appellate Division of the New York State Supreme Court on July 28, 2026. *(A true and correct copy of the date-stamped Appellate Notice of Appeal is attached hereto as **Exhibit E-2**).*

35. Following the appellate filing, Plaintiff served the legal counsel for Defendant Board of Elections in the City of New York via both United States Mail and electronic mail.

36. The legal counsel for Defendant Board of Elections in the City of New York claimed non-receipt of the electronic service—citing a missing period punctuation mark prior to the ".gov" domain in the electronic mail address—and utilized this administrative technicality to request a deadline extension until September 11, 2026, which was just three days prior to the scheduled hearing.

37. The appellate court actively rejected the Board of Elections' request for a late extension and ordered a strict, abbreviated response deadline of September 1, 2026, explicitly minimizing any further prejudicial delays to Plaintiff's ballot access dispute.

38. The Appellate Division has officially scheduled Plaintiff's oral arguments and appellate hearing date for September 14, 2026.

39. While Plaintiff has been forced to navigate this grueling, multi-tiered state court system to defend her ballot access, her public campaign operations have been completely halted, severely delayed, and competitively disadvantaged while the opposing candidates continue to campaign unfettered.

40. Plaintiff was forced to exhaustively defend her campaign and petitions in court to prevent the valid signatures of her constituents from being completely thrown out by Defendant Board of Elections in the City of New York, causing immense disruption to her candidacy.

41. Defendant Board of Elections in the City of New York executed the arbitrary disqualification of Plaintiff's petitions and the removal of her name from the ballot at the express behest, direction, and instigation of, and in active concert with, the opposing candidates and Defendants named herein, as part of a coordinated effort to eliminate Plaintiff as a political competitor.

42. Throughout the active election cycle, Defendant Robert Pearl systematically stalked, monitored, and followed Plaintiff while Plaintiff was actively collecting voter signatures, acting as an agent for Defendant Michael Novakhov.

43. The operational association and mutual acquaintance between Defendant Robert Pearl and Defendant Michael Novakhov is publicly evidenced by social media documentation showing them interacting in a friendly manner at a regional Republican Club celebration during the election cycle, confirming they shared a coordinated political environment. *(A true and correct copy of this social media photograph printout is attached hereto as **Exhibit C**).*

44. At all times relevant to this action, Defendant Robert Pearl was an employee, agent, and proxy acting on behalf of, and under the supervision of, Defendant Canarsie Courier.

45. Defendant Canarsie Courier had actual knowledge and was fully aware that their employee, Defendant Robert Pearl, was actively stalking, monitoring, and following Plaintiff.

46. Despite this explicit knowledge, Defendant Canarsie Courier permitted, authorized, or directed Defendant Robert Pearl to continue this campaign of physical intimidation to disrupt Plaintiff's ballot access.

47. Plaintiff resides on the top floor of a seven-story residential apartment building in Brooklyn, New York, making her entirely reliant on the building's elevator system for basic mobility and daily operations.

48. During the active election cycle, the New York City Department of Buildings abruptly ordered the immediate shutdown of the elevator system inside Plaintiff's residential building, forcing Plaintiff to repeatedly climb seven flights of stairs.

49. Immediately following the shutdown, Defendant Michael Novakhov arrived at Plaintiff's building to campaign, using the artificial crisis to solicit political support by requesting that residents contact his office for assistance.

50. The building's management company subsequently issued an official written notice to all tenants, explicitly stating that the **"Department of Buildings ordered the elevator shut down due to a non-hazardous violation, which is an uncommon occurrence for this type of issue."** *(A true and correct copy of this notice is attached hereto as **Exhibit A**).*

51. Defendant Michael Novakhov subsequently appeared on a television news broadcast, publicly taking credit for intervening with the administrative agency and resolving the residential elevator issue, thereby confirming his personal leverage over the irregular agency enforcement action targeted at Plaintiff's residence. *(A true and correct copy of the printed news transcript and broadcast documentation is attached hereto as **Exhibit G**).*

52. The day before Plaintiff's campaign treasurer was legally required to file the campaign's mandatory financial disclosure form with Defendant Board of Elections in the City of New York, the treasurer abruptly and unexpectedly resigned.

53. Due to the sudden resignation, Plaintiff was forced to immediately file emergency administrative paperwork to appoint herself as her own campaign treasurer.

54. Plaintiff promptly mailed the updated treasurer designation paperwork to Defendant Board of Elections in the City of New York and was forced to wait for administrative approval to obtain a credentialed system login required to access the online filing portal.

55. Because Defendant Board of Elections in the City of New York delayed processing the new credentials, Plaintiff was physically locked out of the filing portal, causing the campaign's financial disclosure to be submitted past the deadline.

56. Plaintiff sent a formal letter to Defendant Board of Elections in the City of New York explicitly explaining the emergency treasurer resignation, detailing the lack of portal access, and requesting an administrative waiver for the technical delay.

57. Despite receiving explicit notice of the good-faith emergency regarding the sudden treasurer resignation, Defendant Board of Elections in the City of New York arbitrarily denied the waiver and issued a monetary civil penalty of $150.00 against Plaintiff. *(A true and correct copy of the Board of Elections penalty notice, along with Plaintiff's emergency explanation and waiver request letter, is attached hereto collectively as **Exhibit B**).*

58. During this same campaign period, Defendant Jimmy Wagner approached Plaintiff and targeted her with an attempted monetary bribe in exchange for altering her political campaign status.

59. During the active election cycle, an individual sent explicit text messages directly to Plaintiff's personal telephone line, disclosing that he had been offered a five-thousand-dollar ($5,000.00) monetary payment to execute a "political hit" designed to sabotage and destroy Plaintiff's campaign. *(A true and correct printout of these text messages is attached hereto as **Exhibit F**).*

60. Defendants Michael Novakhov and Joey Cohen-Saban actively weaponized multiple local and state government agencies to harass Plaintiff for the express purpose of forcing Plaintiff's removal from the ballot.

61. Defendants Michael Novakhov and Joey Cohen-Saban intentionally utilized administrative bodies that possessed no legal oversight, regulatory jurisdiction, or connection to Plaintiff's active campaign infrastructure to issue unverified civil penalties against Plaintiff.

62. These administrative bodies targeted Plaintiff with retaliatory civil penalties using automated, computer-generated documents lacking proper verification or legal basis.

63. As a direct result of the Defendants' systematic campaign of physical stalking, targeted bribery attempts, and administrative harassment, Plaintiff suffered extreme emotional distress, severe mental anxiety, and constant fear for her personal safety while attempting to exercise her constitutional right to run for local public office.

## CAUSE OF ACTION

### COUNT I: First Amendment Violation — Freedom of Speech and Association (42 U.S.C. § 1343 and § 1983 — Against All Defendants)

64. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 63 as if fully set forth herein.

65. The First Amendment protects the rights of candidates to run for public office and the rights of qualified voters to associate behind, support, and cast ballots for their candidate of choice.

66. By actively disqualifying Plaintiff over a minor technicality on a cover sheet, despite the submission of 1,505 valid voter signatures, Defendants severely and unlawfully burdened access to the ballot.

67. Defendants' parallel campaign of stalking, attempted bribery, and targeted agency harassment was executed to suppress political speech, silence a political campaign, and deny voters their right to associate with Plaintiff.

68. As a direct and proximate result of Defendants' unconstitutional actions, Plaintiff's rights to free speech and association were violated, causing severe economic, personal, and reputational injury.

**COUNT II: Fourteenth Amendment Violation — Equal Protection and Due Process (42 U.S.C. § 1343 and § 1983 — Against All Defendants)**

69. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 68 as if fully set forth herein.

70. The Due Process and Equal Protection Clauses of the Fourteenth Amendment prohibit government bodies from enforcing administrative rules in an unfair, selective, arbitrary, or capricious manner.

71. Defendants targeted Plaintiff by selectively and punitively enforcing rigid cover sheet requirements while failing to apply identical hyper-technical standards to other similarly situated campaigns.

72. Defendants further violated due process by weaponizing unrelated administrative agencies to generate unverified computer documents and levy retaliatory civil penalties without proper notice, hearing, or legal basis.

73. As a direct and proximate result of this arbitrary administrative enforcement, Plaintiff was denied a fair opportunity to secure ballot placement, causing severe constitutional and financial harm.

**COUNT III: Civil Conspiracy to Interfere with Civil Rights (42 U.S.C. § 1343 and § 1985(3) — Against All Defendants)**

74. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 73 as if fully set forth herein.

75. The Defendants, acting individually and in conspiracy under color of state law, consciously coordinated a conspiratorial plan to actively suppress ballot access and sabotage Plaintiff's operations utilizing state machinery and unlawful intimidation tactics to strip Plaintiff of a rightful ballot position.

76. The use of a minor clerical error on a cover sheet to invalidate 1,505 constitutional expressions of voter support constitutes an arbitrary, capricious, and unlawful barrier to ballot access, specifically designed to deprive Plaintiff, and the 1,505 citizens who signed Plaintiff's petitions, of the equal protection of the laws and equal privileges under the law.

77. The overt acts taken in furtherance of this conspiracy include, but are not limited to: orchestrating the physical stalking of Plaintiff by Defendant Robert Pearl under the supervision of Defendant Canarsie Courier and with the knowledge of Defendant Michael Novakhov; executing courthouse library surveillance and an coercive economic inducement offer through Defendant Jimmy Wagner; executing an aggressive corridor intimidation and solicitation confrontation via legal counsel for Defendant Joey Cohen-

Saban; and coordinating with administrative agencies to execute irregular enforcement actions and issue unverified civil penalties.

**78.** As a direct and proximate result of this illicit conspiracy, Plaintiff was forced off the ballot and suffered severe financial, reputational, and deep emotional injury.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in their favor and against the Defendants, jointly and severally, and grant the following relief:

**A. Declaratory Relief:** A formal judicial finding that the Defendants' actions violated Plaintiff's constitutional rights to ballot access and due process, by violating Plaintiff's First Amendment rights to free speech and association and Fourteenth Amendment rights to Due Process and Equal Protection;

**B. Injunctive Relief:** An immediate preliminary and permanent injunction ordering the Defendants, their agents, and the Board of Elections to restore Plaintiff's proper placement on the active election ballot, and further restraining the Defendants from enforcing arbitrary administrative determinations or unverified civil penalties against Plaintiff's campaign;

**C. Compensatory Damages:** An award of financial compensation against the Defendants, jointly and severally, for documented economic loss, pain, suffering, and severe mental stress caused by their unlawful conduct in the amount of $1,000,000.00 (One Million Dollars);

**D. Punitive Damages:** An award against the individual Defendants for their malicious, intentional, and bad-faith interference with an active election in the amount of $200,000.00 (Two Hundred Thousand Dollars) each, categorized as follows:

- $200,000.00 against Defendant Robert Pearl
- $200,000.00 against Defendant Jimmy Wagner
- $200,000.00 against Defendant Board of Elections in the City of New York
- $200,000.00 against Defendant Michael Novakhov
- $200,000.00 against Defendant Joey Cohen-Saban
- $200,000.00 against Defendant Canarsie Courier

**E. Costs of Suit**: An award covering the costs of this lawsuit, including all applicable filing fees; and

**F. Other Relief:** Any such other and further relief as this Court deems just, proper, and equitable.

Dated: August 31, 2026

Brooklyn, New York

Respectfully submitted,

**RENE M. MITCHELL**
*Plaintiff Pro Se*

## VERIFICATION

I, **RENE M. MITCHELL**, declare as follows:

1. I am the Plaintiff *Pro Se* in the above-captioned matter.
2. I have read the foregoing Complaint and know the contents thereof.
3. The factual allegations stated in paragraphs 1 through **78** are true to my own personal knowledge, except as to those matters stated upon information and belief, and as to those matters, I believe them to be true.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct pursuant to **28 U.S.C. § 1746**.

Executed on this 31 day of August, 2026, at Brooklyn, New York.

**Rene M. Mitchell**
*Plaintiff Pro Se*

## PLAINTIFF'S INDEX OF EXHIBITS

| Exhibit Designation | Description of Attached Documentary Evidence |
|---|---|
| **EXHIBIT A** | True and correct copy of the official written notice from the residential building management company confirming the irregular New York City Department of Buildings elevator shutdown at Plaintiff's seven-story residence. |
| **EXHIBIT B** | True and correct copies of the $150.00 financial penalty notice issued by Defendant Board of Elections in the City of New York, stacked together with Plaintiff's emergency notification and waiver request letter regarding her campaign treasurer's sudden resignation. |
| **EXHIBIT C** | True and correct printed screenshot copy of the public social media photograph showing Defendant [Defendant A] and Defendant [Defendant D] interacting in a friendly manner at the regional Republican Club celebration. |
| **EXHIBIT D** | True and correct copy of the official ballot Disqualification Notice and the rejected petition cover sheet showing the placement of the name "Independent" on the top line and "Accountability for NYS" in the table below, issued by Defendant Board of Elections in the City of New York. |
| **EXHIBIT E** | True and correct copy of the officially date-stamped first page of Plaintiff's state court CPLR Article 78 Petition filed on June 23, 2026. |
| **EXHIBIT E-1** | True and correct copy of the New York State Supreme Court's Final Decision and Order upholding the disqualification, issued on June 26, 2026. |
| **EXHIBIT E-2** | True and correct copy of the officially date-stamped Notice of Appeal filed by Plaintiff in the Appellate Division of the New York State Supreme Court on July 28, 2026. |
| **EXHIBIT F** | True and correct printed screenshot copies of the explicit text messages disclosing the five-thousand-dollar ($5,000.00) "political hit" offer targeting Plaintiff's campaign. |
| **EXHIBIT G** | True and correct copy of the printed television news broadcast transcript and campaign documentation demonstrating Defendant [Defendant D] publicly taking credit for the administrative elevator intervention |